**John ROSENDAHL, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. 4087.

Supreme Court of Alaska.

March 2, 1979.

Dick L. Madson, Fairbanks, for appellant.

James P. Doogan, Jr., Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, Avrum Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE, and MATTHEWS, JJ.

OPINION

RABINOWITZ, Chief Justice.

The superior court sentenced John Rosendahl to concurrent ten year terms of imprisonment upon his pleas of nolo contendere to separate counts of negligent homicide[1] and failure to render assistance.[2] This sentence appeal followed.[3]

---

1. AS 11.15.080 provides:
   *Negligent Homicide.* Every killing of a human being by the culpable negligence of another, when the killing is not murder in the first or second degree, or is not justifiable or excusable, is manslaughter, and is punishable accordingly.
   AS 11.15.080 is repealed by ch. 166, § 21, SLA 1978, effective January 1, 1980.

2. AS 28.35.060(c) provides:
   A person who fails to comply with a requirement of this section regarding assisting an injured person is, upon conviction, punishable by imprisonment for not more than 10 years, or by a fine of not more than $10,000, or by both. This provision does not apply to a person incapacitated by the accident to the extent he is physically incapable of complying with the requirement.

3. The court's sentence also suspended Rosendahl's operator's license for a period of three years. Additionally, the superior court recommended that Rosendahl be afforded work re-

In *Layland v. State*, 549 P.2d 1182, 1184 (Alaska 1976) we wrote:

> Recent statistics indicate that thousands of innocent people are killed or seriously injured nationwide each year by automobile drivers who take to the road in spite of the fact that they are highly intoxicated. Unlike many crimes, the victim has no way of protecting himself. While vehicular homicide does not require a criminal intent, the fact that a loss of life is involved compels us to consider it among the most serious offenses. The unique nature of the offense mandates that the trial court, in fashioning a sentence, place heavy emphasis on societal condemnation of the conduct and the need to protect society.

This case once again demonstrates the tragic consequences which can result when a vehicle is operated by one who is intoxicated.

Rosa Bermudez, a thirty year old mother of two children, was struck and killed by a vehicle operated by John Rosendahl while she was walking along the shoulder of the road in the vicinity of Fairbanks.[4] After striking Rosa Bermudez, appellant failed to stop his vehicle. Appellant's wife informed the investigating officers that upon her husband's return home on the morning in question she observed that his vehicle had a broken headlight and a damaged right front fender and hood. Subsequently she confronted appellant as to the cause of the damage. John Rosendahl then explained that he had had an accident in town and was going to find the car, speak to its owner, and make arrangements to get it fixed. According to Mrs. Rosendahl her husband then fixed his vehicle's broken headlight and proceeded to repair the radiator. The police also interviewed appellant's father, Eugene Rosendahl. He informed the investigators that on the morning in question he observed damage to the hood and fender of his son's pickup. Eugene Rosendahl additionally informed the investigators that when he questioned his son concerning the damage to the vehicle John admitted that he had been drinking too much and stated, "It's too damn awful, I don't want to talk about it." The elder Rosendahl further stated that his son exclaimed that he wanted to shoot himself or that someone should shoot him for what he had done.[5]

John Rosendahl has amassed a significant driving offense record which includes both alcohol and non-alcohol related offenses. His record reveals two prior convictions for operating a vehicle while under the influence of intoxicating beverages as well as five speeding convictions spanning a three and one half year period. Rosendahl was also convicted of the crime of possession of a firearm while intoxicated.

As one of his specifications of error Rosendahl has argued that the superior court's imposition of a ten-year sentence for negligent homicide was excessive in view of the particular facts of the case. Review of the entire record in light of the sentencing standards which were articulated in *State v. Chaney*, 477 P.2d 441 (Alaska 1970), has left us with the conviction that the superior

lease and be allowed to participate in an alcoholism treatment program.

**4.** Rosa Bermudez was found at 7:45 a. m. lying approximately twenty-five feet from Badger Road in a dirt driveway. The weather was clear on the morning of the accident and visibility along the roadway was unobstructed. No skid marks or signs of braking were observed. Glass fragments from a headlight were found spanning approximately eighty feet from the point of impact at the edge of the pavement to the location of the victim's body.

**5.** Acting pursuant to an anonymous phone call the police eventually obtained a search warrant and seized appellant's vehicle. Subsequent laboratory tests revealed that glass fragments recovered from the scene of the accident and in the vicinity of the parked vehicle came from the same vehicle headlight lens.

court was not clearly mistaken in imposing a ten-year sentence for Rosendahl's negligent killing of Rosa Bermudez. Our study of the record has also persuaded us that the superior court did not fail to consider all appropriate sentencing factors in reaching its decision to impose a ten-year sentence. In explaining its reasons for the sentence it fashioned the superior court stated, in part:

> I find that in Alaska—in the Fairbanks area, there is a substantial problem with alcohol and driving. . . . [I]t seems to me that this court has an obligation to indicate to society, and to impress upon society and other people who are similarly inclined to go about driving on the highways under the influence of alcohol that this type of conduct will not be tolerated. Will not be tolerated now, will not be tolerated in the future. There's no question in the court's mind that if someone goes about operating a motor vehicle over a substantial period of time—by that, the court means on numerous occasions under the influence—they're going to get in substantial trouble. They'll either kill themselves, they'll injure themselves, or they will injure others. And this court has an obligation to society to indicate to society that that type of conduct will not be tolerated. Therefore, this court feels the sentence . . . will reaffirm society's norms that that type of conduct will not be tolerated.

Additionally it is apparent that the superior court had persuasive grounds for rejecting Rosendahl's assertions that he is well on the way to being rehabilitated and has experienced a complete change in his attitude toward his responsibilities to society and his family, and has accepted responsibility for the fatal accident. A diagnosis from the Comprehensive Alcoholism Program and the presentence report do not support these assertions of appellant.[6] These reports disclose that Rosendahl has not as yet accepted the fact that he has an alcohol problem and further revealed that it is too early to make any prediction as to the probability of Rosendahl's long-term recovery from alcoholism.

Of additional significance to the superior court was Rosendahl's substantial record of prior driving offenses. In this regard the sentencing court observed that:

> [U]nder the circumstances of this case, where Mr. Rosendahl has a substantial driving record, not only with respect to non-alcohol-related offenses, but also with respect to alcohol-related offenses, this court has an obligation, both to the defendant as well as to society, to impose a substantial sentence.

Based on the foregoing we have determined that the superior court was not clearly mistaken in imposing the sentence it selected. Here Rosendahl received a sentence which is half the maximum sentence prescribed for negligent homicide.[7] Given the gravity of the offense, Rosendahl's prior driving record, the relevant data concerning the prospects for rehabilitation of his alcohol problems, and the necessity for both general and individual deterrence, we hold that the superior court's ten-year sentence for negligent homicide is not excessive.[8]

---

6. The author of the Comprehensive Alcoholism Program diagnosis concluded that Rosendahl was in the middle stages of alcoholism and went on to state, in part:

> Mr. Rosendahl [is] an individual who, although aware of his arrest record to this time, still does not believe or accept that he has a alcohol problem. I feel that this present drinking situation is not unique and the chances of it occurring again are highly probable due to the information I gained on the MAST [Michigan Alcohol Screening Test] as well as his already established arrest record.

7. AS 11.15.080 provides that negligent homicide "is manslaughter, and is punishable accordingly." AS 11.15.040 provides:

> *Manslaughter.* Except as provided in §§ 10 —30 of this chapter, a person who unlawfully kills another is guilty of manslaughter, and is punishable by imprisonment in the penitentiary for not less than one year nor more than 20 years.

Both AS 11.15.040 and AS 11.15.080 have been repealed by ch. 166, § 21, SLA 1978, effective January 1, 1980.

8. In *Godwin v. State,* 554 P.2d 453, 455 (Alaska 1976), this court stated:

As to Rosendahl's additional attack on the ten-year sentence given upon his conviction of the offense of failure to render assistance, we have reviewed appellant's arguments and are not persuaded that they warrant any modification of the sentence imposed by the superior court.[9]

The sentences imposed are Affirmed.

In any case involving loss of life, however, and particularly in an offense involving driving while under the influence of alcohol, major considerations are the goals of deterrence of our members of the community and community condemnation of the offender and the offense so as to reaffirm societal norms and to maintain respect for those norms.

See also *Bishop v. State,* 573 P.2d 856 (Alaska 1978); *Sandvik v. State,* 564 P.2d 20 (Alaska 1977); *Layland v. State,* 549 P.2d 1182, 1184 (Alaska 1976).

9. The primary contention of appellant is that imposition of the maximum sentence of ten years for the crime of failure to render assistance was unwarranted since the superior court lacked, a basis for characterizing him as the worst type of offender of Alaska's statutory duty to render assistance. We find this assertion without merit.

In *Waters v. State,* 483 P.2d 199, 201 (Alaska 1971), this court discussed the necessity of requiring a foundation of characterizing the defendant as the worst type of offender when imposing a maximum sentence. *State v. Wortham,* 537 P.2d 1117, 1120 (Alaska 1975), contains a discussion as to the relevant factors in making a determination of worst type of offender classification. *See also Wilson v. State,* 582 P.2d 154, 157 n. 3 (Alaska 1978), which indicates that the relevant criterion for determining worst offender status "is [the] worst offender within the group of those persons committing the offense in question."